In the Matter of the Estate of HENRY P. ROSE, Deceased.

Surrogate's Court, Erie County, August 3, 1951.

*Michael J. McMorrow* for Oliver F. Storer, as administrator of the estate of Marion E. Rose, deceased, petitioner.

*Charles J. Knoell* and *Clark B. Bassett* for Harry E. Rose, as administrator of the estate of Henry P. Rose, deceased, respondent.

BUSCAGLIA, S.   This is a proceeding for the revocation of letters of administration heretofore issued by this court to Harry E. Rose, the petition also asking that letters of administration be issued to the petitioner.

The decedent herein and his wife, Marion E. Rose, were residents of the city of Tonawanda.  On February 10, 1951, they went to a winter resort in Cattaraugus County.  They rented a room at an establishment known as the Saddle House and that evening were to meet some of their friends there.  The undisputed evidence shows that they retired to their room at about 6:00 P.M.  Their companions waited for them in the restaurant section of the hotel.  After a considerable period of time had elapsed, one of their friends went and knocked on the door and, receiving no response, went around to the window and upon looking in saw that the room was full of smoke or fumes.  Thereupon, the door was broken down and the unconscious couple removed.  Their bodies were placed on tables in the restaurant and their friends and other persons present began administering artificial respiration.

Shortly thereafter, Dr. Otis Case, a practicing physician in the city of Salamanca, arrived at the hotel in response to a call. At the hearing he testified substantially as follows: He examined both Mr. and Mrs. Rose and from the history given him, gave a diagnosis of monoxide poisoning.  He took their pulses, applied his stethescope and administered adrenalin.  He testified that he found life in both parties and said that Mr. Rose died at approximately 10:00 P.M. and Mrs. Rose at 11:00 P.M., and he so signified on the certificate of death.  On cross-examination the doctor stated that gas poisoning such as this usually causes death within a short period.  He recalled telling the couple's friends that both cases were hopeless and that if he had arrived earlier he still would have been able to do nothing to help.

The fire chief of the city of Salamanca testifying for the petitioner said that he had been in attendance with the fire department's respirator and recalled the doctor pronouncing Mr. Rose dead an hour earlier than his wife.

The respondent then called several witnesses, friends of the deceased couple, who were present in the Saddle House on the fatal evening.  These witnesses were as equally disinterested as the attending physician and they related their conversations with the doctor.  The court does not deem it necessary to detail those conversations.  It suffices to say that these people testified that the doctor stated to them that both the man and his wife were dead.  He said, according to the witnesses, that he was

permitting the respiratory treatment to continue because it kept the stricken friends occupied. One of the witnesses testified that the doctor said the persons could not have survived more than fifteen minutes. Another witness recalled that the doctor had never given any indication that he found life in either Mr. or Mrs. Rose.

These are the facts upon which the court must make a finding of fact as to whether or not there is sufficient evidence that Mrs. Rose survived Mr. Rose. Subdivision 1 of section 89 of the Decedent Estate Law provided:

" § 89. *Disposition of property where there is no sufficient evidence that persons have died otherwise than simultaneously.*

" 1. Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as otherwise provided in this section."

Stating the problem briefly, we have the unequivocal statement of the attending psysician that one of these persons died an hour earlier than the other, which information the doctor also entered on the certificates of death. Against this we have the testimony of disinterested and impressive witnesses that the doctor had stated to them that both persons were dead upon his arrival. It is not necessary to mention the possible ways in which this conflicting testimony may be reconciled. It may be that the doctor did not wish to extend any hope to the friends of the decedents and therefore did not disclose to them the faint spark of life which he detected in both the man and his wife.

It suffices to say that the court must hold that such testimony of an attending physician is sufficient to establish that Mrs. Rose survived her husband by approximately one hour.

It has occurred to the court, however, that while the mandate of the statute requires this decision, we cannot help but note that the ends of justice might be better served if the section were to provide the same equitable division of assets, not only where there is insufficient evidence that one has survived the other, but in any case where two such deaths result from a common disaster.

A decree may enter in accordance with this opinion.